UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Vernell Freeman, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:20-CV-631 JD ) |
| Robert Carter, *et al.*, | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Vernell Freeman is an inmate at the Miami Correctional Facility. In April 2018, Mr. Freeman suffered a serious head injury following a fall from a top bunk. Mr. Freeman is now suing Robert Carter, the Commissioner of the Indiana Department of Corrections; William Hyatte, the Warden of the Miami Correctional Facility; Wexford of Indiana, LLC; forty-three Wexford Employees; and twenty-seven Miami Correctional Facility officers. (DE 120.) Mr. Freeman alleges, against all Defendants, violations of his Eighth Amendment rights and a state tort claim of negligence. (DE 120.)

Commissioner Carter and Warden Hyatt have responded to Mr. Freeman's suit with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Freeman has failed to allege any plausible claims. (DE 145.) Wexford has likewise moved to dismiss under Rule 12(b)(6). (DE 136.) As for the forty-three named Wexford Employees, they moved to dismiss pursuant to Rules 12(b)(2), 12(b)(5), and 4(m), claiming that they were not timely served. For the reasons explained below, the Court will grant all three motions to dismiss.[1]

---

[1] The twenty-seven named MCF Employees have not filed an appearance or responded to Mr. Freeman's suit, but it's not clear if they have been properly served. The Court will thus defer deciding whether it has personal jurisdiction over them at a later date.

1

A. Background

*(1) Procedural Posture of the Case*

Mr. Freeman filed his original complaint on April 29, 2020. (DE 1.) In it, he names as defendants Commissioner Carter and Warden Hyatte, Wexford, John Does 1-50 in their capacities as Miami Correctional Facility officers and employees, and John Roes 1-50 in their capacities as Wexford employees. (*Id.*) In Mr. Freeman's first amended complaint, filed on July 20, 2020, the Defendants remained the same. (DE 21.) Next, on September 21, 2020, Mr. Freeman filed his second amended complaint. (DE 120.) In this complaint, instead of John Does 1-50, Mr. Freeman named twenty-seven Miami Correctional Facility Officers and, instead of John Roes 1-50, he named forty-three Wexford Employees. *Id.*

*(2) Allegations in the Second Amended Complaint*

Mr. Freeman alleges the following facts in his second amended complaint: Mr. Freeman is incarcerated at Miami Correctional Facility. Due to his serious, continuing back pain, Mr. Freeman received, on April 28, 2018, a bottom bunk pass. (DE 120 ¶ 30.) Nevertheless, he was assigned to a top bunk. (*Id.* ¶ 32.) Just two days later, Mr. Freeman fell from the top bunk, struck his head, and lost consciousness. (*Id.* ¶ 36.) He soon began to experience severe nausea, dizziness, and headaches. (*Id.* ¶ 38.) Consequently, he filled out several requests for health care, periodically received medical treatment from the Wexford Employees, and received a CT scan thirty-nine days after his fall. (*Id.* ¶ 49.) The scan showed a small subdural hematoma. Later, Mr. Freeman began to have seizures. (*Id.* ¶ 62.) Meanwhile, he had been taking pain medication prescribed by someone at Wexford that he believes was a cause for his continuing bleeding inside his head. A second CT scan taken on July 19, revealed a large subdural hematoma, and

Mr. Freeman underwent surgery the next day to treat it. (*Id*. ¶¶ 68–70.) While the outside treating physician referred him for a follow up CT scan four days later, he did not actually receive the scan until two months later. Mr. Freeman claims that this series of events demonstrates that all Defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment. (*Id*. ¶ 124.) In addition, he believes that Wexford implemented cost cutting policies, which resulted in failure to provide timely and adequate medical care. (*Id*. at ¶ 138.) Mr. Freeman also vaguely posits that MCF Employees, Wexford Employees and, ultimately all Defendants, have failed to protect him from abuse and several attacks by other inmates. (*Id*. ¶¶ 78–79, 86, 90–93.)

The second amended complaint additionally suggests, in a rather boilerplate fashion, that Mr. Freeman is also seeking injunctive relief (*see Id*. ¶ 143). Yet his allegations are devoid of any specifics. For example, he only states that the Defendants "continue to fail to provide him with appropriate medical care presently" (*id*. ¶ 128) and "fail to grant off-site visits promptly for a seriously ill Mr. Freeman" (*id*. ¶ 129). Or he states only legal conclusions: "As a result of all of the aforementioned actions or lack thereof, Defendants were and are continuing to act deliberately indifferent to Mr. Freeman's obvious and serious medical condition and needs, in violation of his rights ......" (*Id*. ¶ 141.)

In closing this section, it must be noted that it is difficult to discern the details of Mr. Freeman's complaint because he sweepingly attributes just about every allegation to either groups of defendants (e.g., "Wexford Defendants," "Wexford Employees," or "MCF Employees") or every defendant ("the Defendants"), without regard to their actual involvement.[2]

---

[2] For example, it's hardly plausible that every defendant—starting with the Commissioner and ending with the twenty-seventh guard—was involved in not sending Mr. Freeman to an offsite scan appointment as he alleges. (*See* DE 120 ¶ 72 ("Defendants did not send Mr. Freeman for a the follow up scan or appointment that was ordered by the offsite physicians."))

Not counting the introductory sections, there are 150 paragraphs in the second amended complaint but only C.R., Nathan Bates, Kimberly Myers, Joshua Snow, and Nathanial Angle are mentioned by name and only in a handful of paragraphs, even though there are 72 individual defendants in the case. (*See id.* ¶¶ 39–40, 66, 75–76.)

B. **Wexford Employees' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 4(m)**

1. *Legal Standard*

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of personal jurisdiction. Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* In ruling on such a motion, a court must first determine whether the plaintiff has made out a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). At that stage, a court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782.

Motions pursuant to Rule 12(b)(5), challenging service of process, have the same standard of review as Rule 12(b)(2) motions because "valid service of process is necessary in order to assert personal jurisdiction over a defendant." *Lozanovski v. Bourrell*, No. 2:15-cv-454, 2018 WL 925251, at *5 (N.D. Ind. Feb. 15, 2018).

If a defendant is not served properly, Rule 4(m) contemplates dismissal without prejudice, unless the plaintiff shows good cause for the failure:

> If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period . . . .

Fed. R. Civ. P. 4(m).

As relevant here, Rule 4(e)(1) provides that service can be accomplished by "following state law for serving a summons...... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In turn, Indiana law allows service by mail:

> Service may be made upon an individual, or an individual acting in a representative capacity, by:
>
> (1) Sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter.

Ind. T. R. 4.1(A)(1).

When a plaintiff fails to serve a defendant, the "court must first inquire whether a plaintiff has established good cause for failing to effect timely service." *Scott v. Menard*, No. 2:10-cv-442, 2011 WL 13254535, at *1 (N.D. Ind. Apr. 26, 2011) (citing *Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 340 (7th Cir. 1996)). If a plaintiff establishes good cause, the court is required to afford the plaintiff additional time for service. *Id.*; Fed. R. Civ. P. 4(m). In the absence of good cause, a court has discretion to permit service after the 90-day period or dismiss the complaint without prejudice. *Panaras*, 94 F.3d at 340.

> The factors that courts typically consider when deciding whether to grant an extension of time for service of process include but are not limited to: whether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would prevent refiling of the action; whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the plaintiff ever requested an extension from the court due to difficulties in perfecting service; and

> whether the plaintiff diligently pursued service during the allotted period. [*Cardenas v. City of Chicago*, 646 F.3d 1001, 1006 (7th Cir. 2011).] "Even if the balance of hardships appears to favor an extension, the district court retain[s] its discretion to hold the Plaintiffs accountable for their actions—or, more accurately, inaction—by dismissing the case." *Cardenas*, 646 F.3d at 1007.

*Jones v. Ramos*, No. 20-2017, 2021 WL 4024799, at *3 (7th Cir. Sept. 3, 2021).

### *2. Discussion*

The Wexford Employees seek to dismiss Mr. Freeman's two counts against them pursuant to Rules 12(b)(2), 12(b)(5), and 4(m). Mr. Freeman attempted to serve the Employees by mail only. Thus, Indiana Trial Rule 4.1(A)(1) controls. This provision requires counsel to "[s]end[] a copy of the summons and complaint . . . to [defendant's] residence, place of business or employment." Ind. T. R. 4.1(A)(1). The Seventh Circuit has interpreted the phrase "place of business or employment" in the context of service of process under Indiana Trial Rule 4.1(A)(1) such that "a plaintiff must serve a defendant at a location where he actually reports for work." *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003). In this case, none of the Wexford Employees had ever physically worked at either Wexford's corporate address or regional office. (DE 155 Ex. A at 21–22.) Yet, Mr. Freeman's counsel sent the summons first to Wexford's corporate office (DE 143 at 6–7), and then to its regional office. (DE 143 at 4–5). Thus, she failed to serve them at "[their] place of business or employment."[3] Ind. T. R. 4.1(A).

Because the Wexford Employees have not been properly served within 90 days of Mr. Freeman filing his second amended complaint, the Court must consider under Rule 4(m) whether Mr. Freeman's counsel has shown good cause for failing timely service. "Good cause" means a valid reason for delay, such as the defendant's evading service. *Geiger v. Allen,* 850 F.2d 330,

---

[3] Mr. Freeman's counsel does not suggest that she tried to serve Wexford Employees through any other means or at any other place.

333 (7th Cir. 1988). In fact, the only example of good cause provided by the legislative history of Rule 4(m) is when the putative defendant evades service of process. 1982 U.S. Code Cong. & Admin. News 4434, 4446 n.25.[4] Moreover, courts that have considered this issue agree that counsel's inadvertent failure, without more, to serve a defendant within the statutory period does not constitute good cause. *Powell v. Starwalt*, 866 F.2d 964, 965 (7th Cir. 1989); *Floyd v. United States,* 900 F.2d 1045, 1047 (7th Cir. 1990) (explaining that attorney's neglect, without "substantial extenuating factors such as sudden illness or natural disaster," was not enough for good cause). However, Rule 4(m) ensures some flexibility in a determination of good cause, and the range of factors that may be considered by the district judge is not rigidly cabined. *See, e.g.*, *Alvarez v. Edgecome Facility*, 1993 WL 127190, at *3 (S.D.N.Y Apr. 21, 1993) (some factors include: "(1) the reasonableness and diligence of the plaintiff's efforts to serve process; and (2) the prejudice to the defendant from the delay. Mere inadvertence or ignorance of counsel does not rise to the level of 'good cause'").

     Here, Mr. Freeman's counsel has not established good cause for her failure to timely effect service on the Wexford Employees. In response to the Wexford Employees' motion to dismiss, Mr. Freeman's counsel merely asked that she should be given more time to properly serve the Employees. She claimed that she only learned of the issues with process after the Employees' moved to dismiss pursuant to Rule 12(b)(5) as they had failed to raise the problems in earlier motions. However, the Employees could not have raised the service issues sooner: Mr. Freeman's second amended complaint is the first in which the Employees are specifically named. In his previous complaints, the Employees were merely "John Roes 1-50." (DE 1, 21.) Her

---

[4] As of December 1, 1993, Rule 4(j) was amended and redesignated as Rule 4(m). Under Rule 4(j) the time limit was 120 days. Currently, under Rule 4(m), the time limit is 90 days. The substance of the provision stayed the same, other than the length of time given to serve the defendant. References to Federal Rule 4(j) may therefore be treated as references to Federal Rule 4(m). *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298 (3d Cir. 1995).

deficiency is similar to that of the plaintiff's attorney in *Cardenas v. City of Chicago*. There, the Seventh Circuit held that the plaintiffs did not show good cause for failing to comply with the service requirements as it found meritless their "incredible claim that 'only upon being served with Defendant's Motion to Dismiss' [did] they realize[] that their attempt was 'supposedly deficient.'" *Cardenas*, 646 F.3d at 1006. After all, "[a] prudent attorney exercising reasonable care and diligence would have inquired into the matter further when it was obvious that the acknowledgment form was not forthcoming." *Petrucelli*, 46 F.3d at 1306–1307.

Furthermore, in *Cardenas*, Plaintiff's counsel argued, unconvincingly, that the Superintendent was the de facto head of the Office of Legal Affairs and that serving the summons on the Superintendent's office was essentially the same as giving it to the Office of Legal Affairs. *Cardenas*, 646 F.3d at 1006. Mr. Freeman's counsel likewise argues that "the Wexford of Indiana, LLC headquarters would know where the individual employees were currently working; thus, why Plaintiff served his Complaints there. Obviously, Wexford of Indiana, LLC and its employees are aware of the lawsuit and are represented by counsel at this point." (DE 165 at 4.) Like in *Cardenas*, this argument is unavailing. Finally, like in *Cardenas*, where plaintiff's counsel complained about the difficulty of serving police officers in general, Mr. Freeman's counsel describes the challenges that a prison inmate has in determining the names and addresses of the various defendants. This point is not well taken because it was not Mr. Freeman who improperly served the Employees. It was Mr. Freeman's counsel, an attorney with resources and not disadvantaged by prison restrictions, who failed in this regard.[5]

---

[5] Most recently, Mr. Freeman's counsel, in response to this Court's order to show proof of service or good cause in relation to the Correctional Officers (DE 174), issued service—without leave of Court—on all the MCF Employees and all Wexford Employees. The Wexford Employees moved to quash service as to them, to which Mr. Freeman responded with essentially the same arguments as he had already stated in opposition to their motion to dismiss.

In brief, Mr. Freeman's counsel has failed to establish good cause for her failure to timely serve the Wexford Employees as required by Federal Rule 4(m). The Court, therefore, has the option to either dismiss the action against the Wexford Employees without prejudice or to order a specified time period within which Mr. Freeman must perfect service upon the Wexford Employees. *See Troxell*, 160 F.3d at 382.

Dismissal is appropriate here. Mr. Freeman scarcely addresses the *Cardenas* considerations for determining whether the Court should extend his time to serve Wexford Employees. Yet, the *Cardenas* factors seem to favor Wexford Employees, except possibly on the issue of the statute of limitations, which Mr. Freeman doesn't discuss. He hasn't shown that any of the Wexford Employees admitted liability, or knew of the attempted service, or tried to evade service. And most important, Mr. Freeman's second amended complaint is deficient as it pertains to the Wexford Employees: the corpus of the complaint names only two of forty-three Employees and even they are mentioned only in passing without any clear allegation of wrongdoing. (*See, e.g.*, ¶ 40 stating that Nathan Bates, PT, was unable to treat Mr. Freeman for back pain because he had just days ago fell from his top bunk and was" suffering injury to his head and right side of his body"; ¶ 66 stating that "Kimberly Myers, APN, noted in the file that Mr. Freeman needed a CT reevaluation ASAP.") As a result, even if service is allowed, at a minimum, forty-one of the Wexford Employees would have no notice of what wrongs they're alleged to have done. As such, serving the complaint with glaring deficiencies would not profit Mr. Freeman. Accordingly, the Court will grant Wexford Employees' motion to dismiss for lack of personal jurisdiction as a result of insufficient service of process.

**C. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

   *1. Legal Standard*

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face and raise a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

   *2. Commissioner Carter and Warden Hyatte*

Commissioner Carter and Warden Hyatte jointly seek to dismiss Mr. Freeman's Eighth Amendment and state law negligence claims. (DE 145.) As explained below, the Court finds their arguments persuasive and will grant the motion.

### a. Mr. Freeman's Eighth Amendment Claim

Mr. Freeman has sued Commissioner Carter and Warden Hyatte for violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 arguing that they were deliberately indifferent to his medical issues and failed to protect him from other inmates. He contends that they are liable both in their individual and official capacities.

A plaintiff claiming a constitutional violation under § 1983 for denial of medical care must meet both an objective and a subjective component. First, the plaintiff must show that his medical condition was objectively serious. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Second, the plaintiff must show that the defendant officials had a sufficiently culpable state of mind—that their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference" to their serious medical needs. *Estelle*, 429 U.S. at 106. Mr. Freeman has established the first element: he has an objectively serious medical condition as a layperson would likely designate brain injury as serious. The problem here is the subjective component required to establish deliberate indifference. Mr. Freeman's claim is devoid of any allegation that Commissioner Carter and Warden Hyatte even knew of Mr. Freeman's health condition or any danger posed by other inmates. The complaint specifically references Commissioner Carter and Warden Hyatte only three times, and merely asserts that Mr. Freeman was "under the[ir] care and oversight." (DE 120 ¶ 110.) "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Defendants may only be held liable under § 1983 for deprivations that they personally caused or approved of: vicarious liability is not sufficient to support a § 1983 claim. *Monell*, 436 U.S. 658, 694 (1978); *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (holding

that prison officials cannot be held liable under § 1983 unless they personally caused or participated in the alleged violation). Because Mr. Freeman is not alleging that Commissioner Carter and Warden Hyatte were personally involved in his care or lack thereof, his claims against them in their individual capacities must fail.

Mr. Freeman's official capacity claims against them fare no better. A lawsuit against a state official in his official capacity is not a suit against the official, a person, but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, a suit against a state official acting in his official capacity "is no different from a suit against the State itself." *Id.* Yet, "a state is not a 'person' for purposes of Section 1983 and therefore cannot be sued in its own name." *Lett v. Magnant*, 965 F.2d 251, 255 (7th Cir. 1992). There are three exceptions to Eleventh Amendment immunity: (1) suits directly against the State based on a cause of action where Congress has abrogated the state's immunity from suit; (2) suits directly against the State if the State waived its sovereign immunity; and (3) suits against a State official seeking prospective equitable relief for ongoing violations of federal law. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n,* 183 F.3d 558, 563 (7th Cir. 1999). None of these exceptions apply here. Congress did not abrogate the States' immunity through the enactment of § 1983. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Indiana has not consented to this lawsuit. And Mr. Freeman is not seeking injunctive relief.[6] Accordingly, Mr. Freeman Eighth Amendment claim against Commissioner Carter and Warden Hyatte in their official capacities will be dismissed.

---

[6] As noted above, *supra* at 3, Mr. Freeman's claim for injunctive relief is a mere boilerplate, without any supporting allegations. In his brief countering Commissioner Carter and Warden Hyatte's motion to dismiss, he continues the conclusory trend: "Plaintiff has stated in his Complaint enough factual allegations, that if assumed as true on its face, meets his burden and shows that there is at least some possibility that the State Defendants are liable." *Id.* Having failed to develop his argument, he has waived it. *See Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) ("An undeveloped argument constitutes waiver. A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.").

### b. Mr. Freeman's Negligence Claim

Under the Indiana Tort Claims Act, Commissioner Carter and Warden Hyatte are immune from Mr. Freeman's negligence claim. The Act bars "an action by the claimant against the employee personally" if "[the] lawsuit alleg[es] that an employee acted within the scope of the employee's employment." Ind. Code § 34-13-3-5. The Indiana Supreme Court defines "scope of employment" as "conduct of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958)). "Even tortious acts may fall within the scope of employment." *Id.* A plaintiff can get around the immunity only in some narrowly defined circumstances by alleging that that "an act or omission of the employee that causes a loss is:

> (1) criminal;
> (2) clearly outside the scope of the employee's employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.
> The complaint must contain a reasonable factual basis supporting the allegations.

Ind. Code § 34-13-3-5(c).

Here, Mr. Freeman's few factual allegations against the Commissioner Carter and Warden Hyatte are claims against them as employees of the Indiana Department of Corrections. Nothing in Mr. Freeman's complaint suggests they acted outside the scope of their duties as state employees. Commissioner Carter's and Warden Hyatte's alleged implementation of new prison policies, or their neglect of certain unspecified policies (DE 120 at 6, 7, 16, 18, 19) could only be achieved within the scope of their duties at the Indiana Department of Corrections. As such, Commissioner Carter and Warden Hyatte are entitled to immunity under the Indiana Tort Claims

Act. Moreover, Mr. Freeman doesn't assert any of the exceptions to the immunity under the Act. Consequently, the Court will grant Commissioner Carter and Warden Hyatte's motion to dismiss Mr. Freeman's negligence claims against them.

### 3. *Wexford*

Wexford moves under Rule 12(b)(6) to dismiss each of Mr. Freeman's three claims: Count I, the Eighth Amendment claim; Count II, the state law negligence claim; and Count III, the respondeat superior theory of recovery for the torts committed by the Wexford Employees. (DE 136.)

#### a. The Eighth Amendment Claim

Mr. Freeman argues that Wexford was deliberately indifferent to his medical needs and failed to protect him from other inmates, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. A municipality, or private company performing state functions such as Wexford, is liable under § 1983 only when a deprivation of constitutional rights is caused by its policy or custom. *Monell*, 436 U.S. 658, 660; *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012) ("Private corporations acting under [the] color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices.") Such liability may be established three ways: (1) by an express policy that, when enforced, causes a constitutional deprivation; (2) by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) by a showing that the constitutional injury was caused by a person with final policymaking authority. *Franklin v. City of Evanston*, 384 F.3d 838, 843 (7th Cir. 2004).

The Eighth Amendment claim can be readily dismissed against Wexford under the first and third prongs of the *Monell* test. As to the first one, Mr. Freeman has not plead any facts regarding a specific Wexford policy that resulted in his constitutional deprivation. In fact, the allegations are just the opposite: Wexford had policies in place concerning proper health care for prisoners but its employees did not follow them. (*See* DE 120 ¶¶ 26–29.) Likewise, Mr. Freeman has not alleged that his constitutional injury was caused by a person with final policymaking authority.

However, when all inferences in the complaint are construed in Mr. Freeman's favor, the Eighth Amendment claim regarding failure to provide him with adequate healthcare survives the second prong of the *Monell* test. Mr. Freeman alleges that, due to Wexford's decision to save costs, medical staffing has been inadequate to provide timely and adequate health care to any of the prisoners. In fact, he states that after he fell from the top bunk, he received no medical care for three days. (DE 120 ¶ 43.) And although he filed an additional request for healthcare days later, he wasn't seen until twelve days passed and after he filed two additional requests for healthcare. It took another three weeks before he was sent for a CT scan. (*Id.* ¶ 49.) All of this culminated in him needing an emergency surgery. After the surgery, the offsite physician scheduled another CT scan to take place four days later, but Wexford delayed the scan for two months. Mr. Freeman alleges that his treatment experience is consistent with that of other prisoners whose medications and medical appointments are routinely delayed and who aren't able to get care outside the prison despite their deteriorating health. As noted in *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 fn.1 (7th Cir. 2021) (collecting cases), multiple district courts faced with similar allegations have allowed plaintiffs' cases to proceed. Similarly,

this Court, finds that Mr. Freeman has alleged enough to overcome Wexford's motion to dismiss his Eighth Amendment claim concerning his medical care.

However, Mr. Freeman has not sufficiently alleged that Wexford maintained widespread practices endangering inmate safety. He alleges that on April 9, 2020, Wexford Employees heard other inmates telling Mr. Freeman they wanted their money and were going to get the money one way or another. Mr. Freeman was so terrified that he was going to be returned to B house that he tried to run out of the clinic, but he was nevertheless released to B house. (DE 120 ¶ 86.) Also in April, he told Wexford Employees that he was in "a bad dorm where there are a lot of gang fights and robbing of offenders," that "he had been jumped by two other inmates and his cell mate masturbated in his face," and that "he was being abused and that inmates were financially extorting him and [his] wife." (*Id*. ¶ 90–92.) Yet, the complaint does not plausibly allege that Wexford had any control over Mr. Freeman's housing arrangements. And in any case, these events concerning Mr. Freeman only are too isolated to be considered a widespread practice for purposes of *Monell*. *See Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("[A] plaintiff cannot ultimately prove a *Monell* claim at trial based on only his own case or even a handful of others. He must show systemic failings that reflect official deliberate indifference to the serious health needs of inmates. That is intended to be a demanding standard, and it is difficult, time-consuming, and expensive for most private plaintiffs to meet."). Accordingly, Mr. Freeman may not proceed on his failure to protect claim against Wexford.

### (b) Negligence

Mr. Freeman also brings a negligence claim against Wexford, alleging that it failed to train and supervise its employees. In its motion to dismiss, Wexford insists that Mr. Freeman did

not bring any state law claims and that negligence is insufficient to prevail under the Eighth Amendment claim; instead, a showing of deliberate indifference is required.

Wexford's argument is hyper-technical and unreasonable. It bases its point of view on the fact that, in the opening paragraph of his second amended complaint, Mr. Freeman states that he is "seeking damages pursuant to 42 U.S.C. § 1983 and costs under 42 U.S.C. § 1988 to remedy violations of his rights...... " (DE 120 at 2.) Wexford believes that this sentence controls this case. Wexford overlooks that in paragraph 8, Mr. Freeman explicitly states that "[t]his Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mr. Freeman's state law claims." (*Id.* ¶ 8.) Moreover, paragraphs 144–152 clearly indicate that he is seeking recovery under the theory that Wexford was negligent under Indiana law. Since Wexford does not even attempt to argue that Mr. Freeman has not stated a negligence claim under Indiana law, the Court will deny its motion to dismiss the negligence count. While it is true that negligence is insufficient to prevail under the Eighth Amendment, *see Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) (Seventh Circuit cases "recognize that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation"), Mr. Freeman's negligence Count is not concerned with the federal, but state law.

*(c) Respondeat Superior*

In Count III, Mr. Freeman claims that Wexford is liable, under a theory of respondeat superior, for the torts committed by its employees. It is unclear whether he aims this argument to the federal (Eighth Amendment) or state law (negligence) claims. Insofar as his complaint insinuated federal liability under the respondeat superior theory, his claim fails as a matter of law because there is no general respondeat superior liability under 42 U.S.C. § 1983. *J.K.J. v. Polk*

*Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Under the familiar holding of *Monell*, local governments and private companies performing state functions, like Wexford, can be held responsible for constitutional violations only when they themselves cause the deprivation of rights. *Monell*, 436 U.S. at 691–92. The Supreme Court has repeatedly reinforced the strict prohibition against allowing principles of vicarious liability to establish liability under § 1983. *See id.* at 694–95; *see also Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases and reinforcing that the doctrine of *respondeat superior* does not apply under § 1983). Therefore, Wexford cannot be held liable under § 1983 merely because it employs individuals who may have violated Mr. Freeman's Eighth Amendment rights.

Moreover, under the circumstances, Mr. Freeman cannot state a claim against Wexford under the respondeat superior theory for its employees' negligence. "[W]here the employee cannot be held liable individually, an action only based upon respondeat superior is not maintainable against the employer." *Kapitan v. DT Chicagoland Exp. Inc.*, No. 2:12-CV-321, 2013 WL 5655704, at *2 (N.D. Ind. Oct. 15, 2013) (citing *Riffle v. Knecht Excavating, Inc.*, 647 N.E.2d 334, 337 (Ind. Ct. App. 1995) (since an employee could not be held liable, "no action based solely on respondeat superior is maintainable against his employer"). Since Wexford Employees are being dismissed for failure to serve them, they cannot be individually liable for any negligence. As a result, Mr. Freeman's state law claims under the theory of respondeat superior must be dismissed. *See id.* at *4 (finding that, plaintiff could not recover from the defendant under the theory of respondeat superior once its employee was dismissed from the case for failure of service). "Indiana law is clear in this regard: when an employee cannot be held liable under the doctrine of respondeat superior, a claim cannot be maintained against the employer." *Id.* at *3.

D.  Conclusion

In conclusion, the Court—

- **GRANTS** the Wexford Employees' motion to dismiss pursuant to 12(b)(2), 12(b)(5), and 4(m) (DE 154), **GRANTS** their motion to quash (DE 189), and **DISMISSES THEM WITHOUT PREJUDICE**;

- **GRANTS** Commissioner Carter and Warden Hyatte's motion to dismiss pursuant to 12(b)(6) (DE 145); and

- **GRANTS IN PART and DENIES IN PART** Wexford's motion to dismiss pursuant to 12(b)(6) (DE 136);

SO ORDERED.

ENTERED: September 13, 2021

        /s/ JON E. DEGUILIO  
Chief Judge  
United States District Court