UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VERNELL FREEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>WEXFORD OF INDIANA LLC, et al.,<br><br>    Defendants. | Case No. 3:20-CV-631 JD |

**OPINION AND ORDER**

Plaintiff Vernell Freeman is a prisoner, currently incarcerated at the New Castle Correctional Facility. Previously, he was incarcerated at the Miami Correctional Facility ("MCF"), where he suffered a serious head injury following a fall from a top bunk. As a result of the injury and the alleged lack of care that followed, Mr. Freeman filed a lawsuit alleging negligence under Indiana law and violations of his Eighth and Fourteenth Amendment rights. The Second Amended Complaint names as defendants Robert Carter, the Commissioner of the Indiana Department of Corrections; William Hyatte, the Warden of the Miami Correctional Facility; Wexford of Indiana, LLC; forty-three Wexford Employees; and twenty-seven Miami Correctional Facility officers. (DE 120.) However, only the Miami Correctional Facility officers remain in the case as the other defendants have been dismissed.[1] Seventeen of those officers filed a motion asking the Court to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), all the claims against them. For the reasons stated below, the Court will grant the motion with leave to amend the Eighth Amendment claims.

---

[1] Defendants Commissioner Carter, Warden Hyatte, and Wexford of Indiana were dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state claim. The forty-three Wexford employees were dismissed pursuant to Rules 12(b)(2), 12(b)(5), and 4(m) for lack of service. (DE 201.)

A. Background

Mr. Freeman alleges the following facts in his second amended complaint: Mr. Freeman was incarcerated at Miami Correctional Facility. Due to his serious, continuing back pain, Mr. Freeman received, on April 28, 2018, a bottom bunk pass. (DE 120 ¶ 30.) Nevertheless, he was assigned to a top bunk. (*Id*. ¶ 32.) Just two days later, Mr. Freeman fell from the top bunk, struck his head, and lost consciousness. (*Id*. ¶ 36.) He soon began to experience severe nausea, dizziness, and headaches. (*Id*. ¶ 38.) Consequently, he filled out several requests for health care, periodically received medical treatment from the Wexford Employees, and received a CT scan thirty-nine days after his fall. (*Id*. ¶ 49.) The scan showed a small subdural hematoma. Later, Mr. Freeman began to have seizures. (*Id*. ¶ 62.) Meanwhile, he had been taking pain medication prescribed by someone at Wexford that he believes was a cause for his continuing bleeding inside his head. A second CT scan taken on July 19, revealed a large subdural hematoma, and Mr. Freeman underwent surgery the next day to treat it. (*Id*. ¶¶ 68–70.) While the outside treating physician referred him for a follow up CT scan four days later, he did not actually receive the scan until two months later. Mr. Freeman claims that this series of events demonstrates that all Defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment and Fourteenth Amendments. (*Id*. ¶ 124.) Mr. Freeman also vaguely posits that MCF Employees, Wexford Employees and, ultimately all Defendants, have failed to protect him from abuse and several attacks by other inmates. (*Id*. ¶¶ 78–79, 86, 90–93.)

The second amended complaint additionally suggests, in a rather boilerplate fashion, that Mr. Freeman is also seeking injunctive relief (*see Id*. ¶ 143). Yet his allegations are devoid of any specifics. For example, he only states that the Defendants "continue to fail to provide him with appropriate medical care presently" (*id*. ¶ 128) and "fail to grant off-site visits promptly for a

2

seriously ill Mr. Freeman" (*id.* ¶ 129). Or he states only legal conclusions: "As a result of all of the aforementioned actions or lack thereof, Defendants were and are continuing to act deliberately indifferent to Mr. Freeman's obvious and serious medical condition and needs, in violation of his rights . . .."[2] (*Id.* ¶ 141.)

In closing this section, it must be noted that it is difficult to discern the details of Mr. Freeman's complaint because he sweepingly attributes just about every allegation to either groups of defendants (e.g., "Wexford Defendants," "Wexford Employees," or "MCF Employees") or every defendant ("the Defendants"), without regard to their actual involvement. Not counting the introductory sections, there are 150 paragraphs in the second amended complaint but only C.R., Nathan Bates, Kimberly Myers, Joshua Snow, and Nathanial Angle are mentioned by name and only in a handful of paragraphs, even though the caption of the complaint lists 72 individual defendants. (*See id.* ¶¶ 39–40, 66, 75–76.)

The following defendants have moved to dismiss all the claims against them: Nathaniel Angle, Trevor Heishman, Matthew Huffman, Matthew Morson, Dennis Mygrant, Nikkie Neal, Caleb Nelson, Carol Perkins, Andru Sams, Joshua Snow, David Wolfe, Elliot Corner, Marty Workman, Lawrence Schoettmer, Lori Hazlett, Buford Nice, and Shawna Morson.

**B. Legal Standard for a Motion to Dismiss**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all

---

[2] As noted above, Mr. Freeman is no longer at the MCF. Instead, he is currently incarcerated at the New Castle Correctional Facility

3

reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### C. Discussion

#### 1. *Fourteenth Amendment Claim*

The complaint alleges that defendants were deliberately indifferent to his health and safety in violation of the Eighth and Fourteenth Amendments to the United States Constitution. In their brief in support of the motion to dismiss, Defendants point out that only the Eighth Amendment claims are properly before the Court (they are addressed below) because Mr. Freeman was incarcerated at the time of the alleged violations whereas only pretrial detainees may bring a claim for cruel and unusual punishment pursuant to the Fourteenth Amendment. *See e.g.*, *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). In his response, Mr. Freeman acknowledges that he cannot state a claim for cruel and unusual punishment under the Fourteenth Amendment, but argues that he has stated an equal protection claim instead.

To state a claim under the Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). Yet, Mr. Freeman's complaint is devoid of any allegations concerning these elements. In fact, his insistence that he is pursuing an Equal Protection claim against the defendants appears to be an afterthought in response to the defendants' challenge. For example, the second amended complaint explicitly states that his claim under the Fourteenth Amendment is tied to the allegations about cruel and unusual punishment: "[a]s a direct and proximate cause resulting from the Defendants' violation of their duties and the violation of Mr. Freeman's constitutional rights, Mr. Freeman has been deprived of his right to be free from cruel and unusual punishment *as secured to him* under the Eighth and *the Fourteenth Amendment* to the United States Constitution . . . ." (DE 120, Compl. ¶ 142 (emphasis added).) In addition, rather than portraying Mr. Freeman as singled out for mistreatment, the second amended complaint alleges that his mistreatment was consistent with how the prisoners overall are treated at MCF, namely that there's a widespread institutional problem: "Mr. Freeman's experiences are similar to those of other inmates. As demonstrated, inmates with serious medical conditions, like Mr. Freeman, that are actually able to obtain occasional medical care, the treatment is grossly substandard. Conditions are often misdiagnosed, if screening is conducted at all; inmates' medications are delayed, if given at all; and patients are often not permitted to see a doctor until they are in such severe pain or their condition has deteriorated to such an extent that emergency action needs to be taken, just like what happened to Mr. Freeman." (*Id*. ¶ 101–102.) Lacking in the complaint is any suggestion that Mr. Freeman was treated differently from members of the unprotected class

or that the defendants acted with discriminatory intent. Accordingly, the Court will dismiss the Fourteenth Amendment claim as requested.

### 2. *Official Capacity Claims*

Defendants ask that any claims against them in their official capacities be dismissed because they are entitled to immunity under the Eleventh Amendment. In his response, Mr. Freeman concedes that he cannot maintain a cause of action against the defendants in their official capacities. Because an official-capacity claim against state officials is really a claim against the state, *see Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988), without a showing that the state has consented to suit or that its immunity was otherwise abrogated, Mr. Freeman cannot pursue any claims against the defendants in their official capacities because they are immune from such claims. *See Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011) ("[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State.") Accordingly, the Court will dismiss the official capacity claims against the defendants.

### 3. *Claims against the Defendants concerning IDOC's Policies and Procedures*

The second amended complaint broadly states that the individual officers are liable because of IDOC's systematic failures, problematic policies, and procedures, or lack thereof. (DE 120, Compl. at 13–15.) Defendants point out that they cannot be individually sued under a theory that IDOC's policies caused harm to Mr. Freeman (DE 204 at 9) to which Mr. Freeman readily agrees (DE 207 at 10.) Accordingly, the Court will dismiss any claims against the defendants arising out of IDOC's alleged failure to follow its own policies and procedures.

6

### *4. Claims for Injunctive Relief and Declaratory Judgment*

Defendants moved to dismiss Mr. Freeman's claims requesting injunctive and declaratory relief against them. Mr. Freeman concedes that, because he is no longer incarcerated at MCF, he cannot obtain such relief. However, he asks the Court to deny the motion because of the possibility that he may be returned to MCF.

Mr. Freeman's claim for injunctive relief suffers from two shortcomings. First, the individual rank and file officers are not the proper defendants for injunctive relief. *See Crouch v. Wooley*, No. 15-CV-01372-NJR, 2016 WL 192650, at *3 (S.D. Ill. Jan. 15, 2016) ("[T]he proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring that injunctive relief is carried out.") (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (noting that the warden, in his official capacity, is the proper defendant for claims seeking injunctive relief)). Second, Mr. Freeman is no longer at MCF, so a claim for injunctive relief is moot in any case.

"If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.' Allegations of a likely retransfer may not be based on mere speculation." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citing *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). "Furthermore, 'the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality.'" *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)). Similarly, "[w]ith limited exceptions . . . issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely

advisory." *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013)

As Mr. Freeman acknowledges, he is no longer at MCF, and although he asks the Court to allow his injunctive relief claims to continue, he provides no basis for the Court to conclude that he may be returned to MCF. Therefore, this is not an exceptional situation where the "capable-of-repetition" doctrine would apply. Nor is the claim for injunctive relief available against the individual defendants. As a result, his claims for injunctive relief will be dismissed.

In addition, absent a showing of continuing harm, the same is true of his request for declaratory judgment, which will likewise be dismissed. Also, insofar as "the purpose of a declaratory judgment is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages," *Ford v. Lane*, 714 F. Supp. 310, 314 (N.D. Ill. 1989) (quotation marks omitted), Mr. Freeman is not really seeking declaratory judgment but a declaration that the defendants' past conduct violated the law. "This is not a declaratory judgment in the technical sense of that term, but merely the type of declaration that is required in any suit for damages." *Id*.

### 5. *Negligence Claims*

Mr. Freeman asserts a State law negligence claims against the officers, (DE 120, Compl. at 20–21), but this claim must be dismissed because "[u]nder the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their

employment."); *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1033 (N.D. Ind. 2014) ("If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive.") (quotations and citations omitted).

> Under Indiana law, an individual is acting within the scope of his or her employment if the conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958)). "Even criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quotation marks omitted).

*Bishop v. Indiana Dep't of Correction*, No. 3:20-CV-1064-JD-MGG, 2021 WL 2255364, at *2 (N.D. Ind. June 3, 2021).

It is clear from the second amended complaint that Mr. Freeman's negligence claims are based on defendants' conduct within the scope of their employment at MCF. Mr. Freeman complains that he was not moved to a bottom bunk, that the defendants did not immediately obtain medical care for him, that they failed to monitor his medical condition, and that they failed to follow the doctor's orders upon his discharge from the hospital. All these allegations presume the defendants' actions within the scope of their employment. There's no suggestion in the second amended complaint that any of the defendants encountered Mr. Freeman outside of their employment or that their conduct was not of the same general nature as that authorized or incidental to the conduct authorized. In other words, defendants would not have been able to do or fail to do the things they are accused of, but for the fact that they were acting within the scope of their employment. What is more, Mr. Freeman does not identify a single case in support of his argument that the defendants weren't acting within the scope of their employment during their encounters with him. Therefore, the Court will dismiss Mr. Freeman's negligence claims.

### 6. *Federal Rule of Civil Procedure 8*

Defendants argue that the second amended complaint fails to give them a fair notice of the wrongs they are alleged to have committed. They point out that Mr. Freeman has named only Defendants Snow and Angle by name in the body of the complaint and, even then, only in two paragraphs of the almost 160-paragraph complaint. All other defendants are grouped together as to every allegation against them. Thus, the second amended complaint alleges that seemingly each defendant had a role in each occurrence as unlikely as that may be. Consequently, the defendants are asking the Court to dismiss the complaint, except for the Eighth Amendment claims against Defendants Snow and Angle, who are specifically matched with allegedly wrongful conduct.

Mr. Freeman objects to the motion and argues that he has provided sufficient notice to each defendant because his allegations describe specific conduct and include precise dates. He insists that this information suffices to inform all defendants of what they are accused of.

Federal Rule of Civil Procedure requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Therefore, the question before this Court is whether Mr. Freeman's factual allegations provide sufficient notice to defendants of his claims.

According to the complaint, the defendants are the officers at MCF who were charged with overseeing Mr. Freeman. Their ranks range from an Officer to a Sergeant, to a Lieutenant, to a Captain. Yet, all twenty-seven of them are alleged to have participated in just about every aspect of Mr. Freeman's incarceration during the relevant period of time. The only exceptions are noted in paragraphs 75 and 76 of the second amended complaint, where it alleges that Defendants

Snow and Angle saw Mr. Freeman in excruciating pain and instead of getting him medical attention laughed at him and pulled the towel off his face (DE 120, Compl. ¶¶ 75–76), and in paragraph 32, which refers to a single, unnamed MCF employee who failed to place him in an upper bunk, contrary to his medical pass. Other than that, all twenty-seven of them allegedly saw Mr. Freeman being beaten by another inmate, yet failed to intervene (*Id.* ¶ 79.); each of them placed him in the B house (*Id.* ¶ 86) where he was again assaulted by other inmates; also, each defendant failed to grant him an off-site doctor visit when he was seriously ill (*Id.* ¶ 129); and each failed to schedule his follow up appointments as recommended by an offsite doctor (*Id*. ¶ 131). To make it worse, in many instances of the alleged wrongdoing, the officers are also grouped with the healthcare employees and even the Commissioner and the Warden, making it that much more unlikely that every single one of them was a participant in every misdeed.

In support of his contention that the second amended complaint complies with Rule 8, Mr. Freeman is relying on *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009), and *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010), but these cases are of little help.

In *Brooks*, plaintiff sued six defendants accusing them of conspiring to prosecute him and thus violating, among other things, his due process rights. "The primary ground on which the district court dismissed this claim was that [plaintiff] had failed adequately to plead personal involvement, as his complaint stated that 'one or more of the Defendants' had engaged in certain acts or deprived him of his constitutional rights." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). On review, the Court of Appeals for the Seventh Circuit observed that "[t]he district court was correct to point out that [plaintiff] often uses this vague phrasing, which does not adequately connect specific defendants to illegal acts." *Id*. (citing *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("An individual cannot be held liable in a § 1983 action unless he caused or

11

participated in an alleged constitutional deprivation.")). However, the court noted that some parts of the complaint did identify specific acts of each defendant. *Id*. In particular, nine paragraphs described defendant Ross as producing various investigative reports, two paragraphs named two other defendants as having participated in interviews conducted by Ross, and three paragraphs described the participation of the remaining defendants. *Id*. In addition, one paragraph summed up the plaintiff's legal theory by stating that all defendants, while acting in concert with others, maliciously prosecuted the plaintiff. As to this last paragraph, the court found that plaintiff "adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants." *Id*. at 582. Ultimately, though, the court affirmed the district court dismissing the case because this paragraph was "merely a formulaic recitation of the cause of action and nothing more." *Id*.

Unlike in *Brooks,* in the instant case, the second amended complaint names more 73 defendants and almost none of them are mentioned in the body of the complaint. Only two of the twenty-seven MCF officers are identified in the body of the complaint as having had direct involvement with Mr. Freeman. Therefore, it cannot be said that, when Mr. Freeman time and again states that "MCF Employees" did this or failed to do that, he is specifically directing his allegations at all of the defendants. Furthermore, there's no allegation that the defendants acted in concert. Quite the opposite: by accusing each defendant generally and without regard to individual responsibilities, job titles, ranks, or schedules, Mr. Freeman has obscured his claims to the point that it's impossible to tell who did what, when, where, and why. In short, the allegations in the second amended complaint are unlike those in *Brooks*.

In *Swanson*, the plaintiff sued a bank, an appraiser and his employer because she believed that all three had discriminated against her on the basis of her race when the bank turned down

her application for a home-equity loan. *Swanson*, 614 F.3d at 402. The district court dismissed her complaint but the court of appeals reversed the dismissal. In analyzing the allegations in the complaint, the court noted that the basic requirement of Rule 8 is that "the pleading discharges the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved." *Id*. at 404 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 at 165–173 (3d ed. 2004)). Importantly, the court reviewed plaintiff's claims "defendant-by-defendant." *Id*. at 405. In doing so, the court found that the plaintiff "identifies the type of discrimination that she thinks occurs (racial), by whom ([the bank], through [] the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan)," which was all that "she needed to put in the complaint." *Id*. at 405.

Again, the instant case is different from *Swanson*. Here, the complaint lists not three but seventy-three defendants, and it's impossible to address the claims defendant-by-defendant without shrugging the shoulders as to what each of them is accused of doing. Thus, there's no fair notice to the defendants as required by Rule 8. Simply put, Mr. Freeman's argument that the two cases are alike is unconvincing.

Instead, this case is similar in many respects to *Liera v. City of Chicago*, No. 13 C 9032, 2014 WL 3921359, at *1 (N.D. Ill. Aug. 5, 2014). In *Liera*, four plaintiffs filed an eleven-count complaint, alleging civil rights violations against Chicago police officers following a traffic stop. The complaint identified specific actions of three named police officers who allegedly used excessive force against the plaintiffs. The complaint also contained multiple allegations against thirty-five unspecified police officers, accusing them generally of kneading one of the plaintiffs in his back and neck, slamming his head on the sidewalk, and using pepper spray on him. Some

other unspecified defendants pushed around another plaintiff and placed him under arrest. Other unspecified defendants then went to the plaintiffs' home where they allegedly used excessive force against a pregnant plaintiff. And so on. *Id.* at *1–2.

The district court dismissed the complaint against the thirty-five named, but unspecified, defendants, with leave to replead because they were not put on notice of the claims against them. *Id*. at *3 ("In this case, plaintiffs are able to match specific conduct only to three defendant officers, but bring the complaint against an additional thirty-five police officers without alleging which officers were at which location or which officers participated in the alleged wrongful conduct. Thus, the Unspecified Defendants are not on notice of which actions they are alleged to have committed.") The same is true in the instant case. Of the twenty-seven officer defendants, only two are matched with specific conduct; the allegations against the rest of them do not reveal their personal involvement with any particularity and the complaint does not allege that they all acted in concert with each other. In short, the complaint does not provide the defendants with a fair notice of the claims against them. *See also Carter v. Dolan*, 2009 WL 1809917 at *3 (N.D. Ill. June 25, 2009) ("A complaint that refers to multiple police officer defendants collectively as 'defendant officers' in each of the factual allegations does not provide each defendant officer with sufficient notice of the wrongdoings alleged."). Therefore, the Court will dismiss the second amended complaint, but in the interest of justice, the Court will grant Mr. Freeman leave to amend if he so wishes.

### D. Conclusion

For these reasons, the Court GRANTS IN PART and DENIES IN PART the defendants' motion to dismiss (DE 203). The Court DISMISSES all claims against defendants—

- Trevor Heishman,
- Matthew Huffman,
- Matthew Morson,
- Dennis Mygrant,
- Nikkie Neal,
- Caleb Nelson,
- Carol Perkins,
- Andru Sams,
- David Wolfe,
- Elliot Corner,
- Marty Workman,
- Lawrence Schoettmer,
- Lori Hazlett,
- Buford Nice, and
- Shawna Morson.

(Any claims against the defendants who were not part of the instant motion to dismiss (DE 203) are unaffected by this order.) The Court further DISMISSES all claims against Joshua Snow and Nathanial Angle, except for Mr. Freeman's Eighth Amendment claims against them for deliberate indifference. However, the Court GRANTS leave to Mr. Freeman to amend his complaint as to his Eighth Amendment claims. If he so chooses, Mr. Freeman must file an amended complaint on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library.[3] He needs to carefully read and follow the instructions on the form, particularly the requirements that he "Explain when, where, why, and how each defendant violated your rights" and "Use each defendant's name every time you refer to that defendant." The Court CAUTIONS Mr. Freeman that an amended complaint will supersede all previous complaints and will become the controlling complaint. *See Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999) ("When a plaintiff files an amended complaint, the new complaint supersedes all

---

[3] The Court has previously granted Mr. Freeman's counsel's motion to withdraw and, since then, Mr. Freeman has elected to represent himself.

previous complaints and controls the case from that point forward, and . . . wipes away prior pleadings . . ..").

The deadline for filing the amended complaint is **October 28, 2022**. The Court further CAUTIONS Mr. Freeman that, if he fails to respond by that date, the Court will dismiss this case without further notice as to all seventeen defendants (but not the ten defendants who are not part of the instant motion to dismiss), except as to the Eighth Amendment claims against Defendants Snow and Angle.

SO ORDERED.

ENTERED: September 28, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court