UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VERNELL FREEMAN, <br><br> Plaintiff, <br><br> v. <br><br> NATHANAEL D. ANGLE, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-631-JD-MGG |

OPINION AND ORDER

Before the court is an amended complaint filed by Vernell Freeman, a prisoner without a lawyer. (DE 236.) This case already has a long procedural history. On April 30, 2018, Mr. Freeman fell from a top bunk at Miami Correctional Facility ("MCF") and suffered a serious head injury, culminating in surgery on July 19, 2018, to drain a subdural hematoma on his brain. He filed this case, represented by counsel, on April 29, 2000, suing the Commissioner of the Indiana Department of Correction ("IDOC"), two Supervisory Officials at MCF, Wexford of Indiana, LLC, as well as 50 unidentified Miami employees and 50 unidentified Wexford employees. (DE 1.) The Second Amended Complaint, filed September 21, 2020, first identified the unknown defendants and named as defendants the IDOC Commissioner, the MCF Warden, Wexford, twenty-seven individual MCF correctional officers, and forty-three Wexford employees. (DE 120.)

In the proceedings that followed, several claims and defendants were dismissed. (*See* DE 201; DE 233.) Of particular relevance here, the forty-three individual Wexford

employees were dismissed without prejudice for lack of personal jurisdiction after the court concluded they were not properly served under Federal Rule of Civil Procedure 4(m) and counsel had not shown good cause or another reason to extend the time for service. (DE 201 at 6-9.) What remained of the complaint was an Eighth Amendment claim against Wexford, a negligence claim against Wexford, an Eighth Amendment claim against Unit Team Manager Nathanael Angle and Lieutenant Joshua Snow, and several claims against the correctional officers who did not join a motion to dismiss filed by the other correctional officers.

Mr. Freeman's attorney was then allowed to withdraw, and Mr. Freeman, now representing himself, has filed an amended complaint that must be screened as required by 28 U.S.C. § 1915A to determine if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. (DE 236.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

The operative complaint alleges that Mr. Freeman had received a bottom bunk pass in January 2018 due to serious, continuing back and neck pain. (DE 236 at 3.) Despite this, on April 28, 2018, Classification Specialist Nikki Neal assigned him to a placement on a top bunk. (*Id.* at 4.) Two days later, on April 30, Freeman fell off the top bunk and injured his head. (*Id.*)

These allegations establish an Eighth Amendment claim against Classification Specialist Neal. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). A prison official's actions that are contrary to the advice of medical professionals can constitute deliberate indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015); *see also Palmer v. Franz*, 928 F.3d 560, 564-65 (7th Cir. 2019) (discussing bottom bunk passes). Thus, Mr. Freeman may proceed against Classification Specialist Neal for assigning him to a top bunk in contravention of the bottom bunk pass.

In the days after his fall, Nurse Practitioner Kimberly Myers directed him to continue taking Excedrin Migraine, which he had been previously prescribed for migraines. (DE 236 at 4, 38.) He also received x-rays of his nose and eye area, which did not reveal any fractures. (*Id.* at 47.) In his complaint, Mr. Freeman challenges NP Myers'

decision to continue him on Excedrin Migraine because that medicine contains a blood thinner, which should not be taken after a head injury. (*Id.* at 4.) Mr. Freeman says he continued to experience dizziness, blurred vision, headaches, and balance issues in the weeks after his fall. (*Id.* at 48-50.) At a May 18, 2018, visit, NP Myers increased his dosage of Excedrin Migraine, expressed concern over his new symptoms, and noted that she saw "no specific observable neurological [symptoms]." (*Id.* at 4, 51-52.)

After that visit, NP Myers began the approval process for a CT scan of Mr. Freeman's head. (DE 236 at 56.) The head CT scan occurred on June 8, 2018, more than a month after his fall, and revealed a small right subdural hematoma. (*Id.* at 5, 53-55.) NP Myers and Dr. Noe Marandet continued him on Excedrin Migraine, which Mr. Freeman contends made the brain bleed worse because the medication contained a blood thinner. (*Id.* at 5, 57-58.) He alleges NP Myers told him to "suck it up" and take the medication because the bleed was "tiny" and would "resolve itself." (*Id.* at 5.)

Mr. Freeman continued to experience symptoms, culminating in several acute episodes in mid-July that led to another CT scan of his head on July 19, 2018. (DE 236 at 5-7, 71-75.) That CT scan revealed an even bigger hematoma on his brain. (*Id.* at 7.) He received surgery that same day to treat the subdural hematoma. (*Id.*) Mr. Freeman says the neurosurgeon told him if he had waited one more day, he would have died. (*Id.*)

For a medical professional to be held liable under the Eighth Amendment for deliberate indifference to an inmate's serious medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually

4

did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitutes deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted). Here, Mr. Freeman plausibly alleges that the decision to continue him on a medication containing a blood thinner after his fall was a substantial departure from accepted professional judgment, and thus he may proceed against Dr. Marandet and NP Myers on an Eighth Amendment claim.[1]

Mr. Freeman, however, does not state a claim against the remaining Wexford defendants, whom he had contact with in the days before his surgery. He alleges that Nurse Katelyn Crull examined him after he passed out in his cell on July 16, 2018, around 3:00 in the morning. (DE 236 at 5.) He reported to her that for the past six days

---

[1] To the extent Mr. Freeman seeks to assert a state-law claim of negligence against these medical providers, there is no indication that he presented a proposed complaint to the state medical review panel and obtained an opinion from the panel before filing this action, as is required to pursue a medical malpractice claim under Indiana law. *See* Ind. Code § 34-18-8-4; *Terry v. Community Health Network*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014).

5

he had been having headaches and sensitivity to light and sound. (*Id.*) He told her that he had a brain bleed and needed more medical treatment than he was given. (*Id.*) She wheeled him to observation because he was unable to walk, assessed him there, and sent the provider an email to schedule an appointment to see him. (*Id.* at 62). After the exam, he was able to walk back to his unit. (*Id.*) Hindsight reveals that in just a few days Mr. Freeman would undergo surgery to drain the hematoma on his brain, but nothing suggests Nurse Crull's treatment decisions here showed she disregarded a serious risk of harm to Mr. Freeman's medical needs.

On July 17, 2018, the day after he passed out, he was admitted to the infirmary. (DE 236 at 5-6.) Nurse Courtney Bridenthal examined him around 8:40 a.m. (*Id.*) He complained that his head would not stop hurting, he could not see out of his right eye, and his pain was a nine out of ten. (*Id.*) The medical records show that Nurse Bridenthal contacted NP Myers for instructions. (*Id.* at 67.) NP Myers gave orders for anti-nausea and pain medication and instructed Mr. Freeman to rest and limit activity until she could see him. (*Id.*) Nurse Bridenthal carried out those instructions, and Mr. Freeman returned to his cell with instructions to contact medical if his symptoms worsened. (*Id.* at 66-67.) Just a few hours later, Mr. Freeman had a possible seizure in his cell and was taken to OSB, awaiting a bed in the infirmary. (*Id.* at 6, 68-70.) The medical record shows that Nurse Bridenthal cared for him in OSB by giving him ice and heat as needed until he was moved to the infirmary. (*Id.* at 70.)

The allegations here show that Nurse Bridenthal did not make any independent decisions regarding Mr. Freeman's care. A nurse may generally defer to instructions

given by a doctor or, here, a nurse practitioner unless "confronted with an inappropriate or questionable practice." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015). Here, the complaint does not plausibly allege that the instructions she received would seem problematic. *See Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (no liability for prison nurse who "wrote down [the plaintiff's] symptoms, checked his vitals, relayed necessary information to [the doctor], and performed her assigned duties."). Therefore, Nurse Bridenthal must be dismissed.

Mr. Freeman also sues Lee Ann Ivers, whom he identifies as an "EPHR User."[2] (DE 236 at 2.) However, the only allegation against her in the complaint is:

> After Mr. Freeman's surgery NP Kimberly Myers along with Lee Ivers stood and watched as Mr. Freeman shook and convulsed as he lie down and they did nothing to help and told Mr. Freeman that they don't believe that anything is happening to him and that he is having panic attacks.

(*Id.* at 7.) Without more, it is unclear why it was deliberate indifference for Lee Ivers to defer to NP Myers' judgment on how to proceed.

Mr. Freeman sues Linda (Lyn) Frye, whom he identifies as a "CMS Administrator." (DE 236 at 2.) It appears that her role in Mr. Freeman's care was processing medical requests and obtaining prescriptions. (*Id.* at 7-8.) The allegations regarding her response to his medical requests are too vague to form a basis for liability; every medical request in the record was answered. Mr. Freeman further complains that following his surgery, Administrator Frye did not obtain the Norco prescribed by the outside doctors; instead, he was given Ultram. However, both Norco and Ultram are

---

[2] EPHR User likely stands for Electronic Personal Health Record User.

opioid-based pain relievers. *See* Norco vs. tramadol: Differences, similarities, and which is better for you, https://www.singlecare.com/blog/norco-vs-tramadol/ (last visited Dec. 9, 2022). This is not a case where the prison refused to give him any painkillers at all, even though one was prescribed by an outside surgeon. *See Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002). Or where the prison doctor flatly refused to prescribe any prescription-strength pain killers, relying instead on over-the-counter substitutes. *See Hayes v. Snyder*, 546 F.3d 516, 524-25 (7th Cir. 2008). Choosing one opioid-based painkiller over another does not demonstrate deliberate indifference. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment." (emphasis in original)). Moreover, after he complained that the Ultram was ineffective, prison medical staff ordered Norco. (DE 236 at 95.) Thus, even assuming Linda Frye made the decision concerning which medication Mr. Freeman was prescribed, she must be dismissed.

In addition, Mr. Freeman sues physical therapist Nathan Bates. The only allegations against him concern the treatment he received for his back pain in March 2018, before his fall happened. (DE 236 at 3.) There is no allegation that PT Bates had any involvement in the fall or his later care. Without any personal involvement in the events related to Mr. Freeman's fall, PT Bates must be dismissed. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

Finally, Mr. Freeman repeats the previous Eighth Amendment claim from the earlier complaints against Lieutenant Joshua Snow and Unit Team Manager Nathanael Angle. Specifically, he alleges that on July 18, 2018, the day before his surgery, he was in the infirmary, laying on a mattress on the floor with an IV in his arm. (DE 236 at 6.) He alleges that NP Myers allowed him to place a towel over his face due to his light sensitivity. (*Id.*) Lt. Snow and UTM Angle allegedly came into the OSB Nurse's Station and took the towel off his head, claiming that he had not been authorized to have it. (*Id.*) He alleges they told him that nothing was wrong with him and accused him of being high on drugs. (*Id.*) He says they laughed when he vomited on the floor. (*Id.*) Mr. Freeman plausibly alleges that Lt. Snow and UTM Angle gratuitously inflicted harm on him in violation of the Eighth Amendment.[3]

The correctional officers have already been served. (*See* DE 233 (concluding Nathaniel Angle, Nikkie Neal, and Joshua Snow, among others, were properly served).) Therefore, service of the amended complaint on the correctional officers' attorney is permitted by Federal Rule of Civil Procedure 5(a)(1)(B) and 5(b)(1). However, NP Myers was among those defendants who were dismissed without prejudice for lack of proper service, (*see* DE 201), and Dr. Marandet has not been previously named as a defendant.[4]

---

[3] To the extent Mr. Freeman wishes to assert a negligence claim against the state defendants, the court already determined that the individual correctional officers were immune from suit under the Indiana Tort Claims Act because they were acting within the scope of their employment. (DE 236 at 8-9.) Mr. Freeman does not address this finding, so the court declines to revisit the issue.

[4] The court takes no position on whether the claims in the amended complaint are timely or whether Mr. Freeman may successfully revive in this lawsuit the claims against NP Myers, who was dismissed without prejudice for lack of service. A dismissal without prejudice does not prevent a plaintiff from filing a new lawsuit against that defendant, though that new lawsuit may end up being time-barred. *See Geiger v. Allen*, 850 F.2d 330, 334 (7th Cir. 1988). "But filing an amended complaint does not restart the

Mr. Freeman is not proceeding in forma pauperis, therefore, the court will not serve NP Myers or Dr. Marandet pursuant to 28 U.S.C. § 1915(d). Rather, it is his obligation to serve the defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) GRANTS Vernell Freeman leave to proceed against Nikki Neal in her individual capacity for compensatory and punitive damages for assigning Mr. Freeman to a top bunk on April 28, 2018, even though he had a bottom bunk pass for medical reasons in violation of the Eighth Amendment;

(2) GRANTS Vernell Freeman leave to proceed against NP Kimberly Myers in her individual capacity for compensatory and punitive damages for continuing Mr. Freeman on a medication containing a blood thinner after he suffered a head injury on August 30, 2018, and after a CT scan revealed a subdural hematoma on his brain on June 8, 2018, in violation of the Eighth Amendment;

(3) GRANTS Vernell Freeman leave to proceed against Dr. Noe Marandet in his individual capacity for compensatory and punitive damages for continuing Mr. Freeman on a medication containing a blood thinner after a CT scan revealed a subdural hematoma on his brain on June 8, 2018, in violation of the Eighth Amendment;

---

clock for serving defendants who are added to an amended complaint after having been dismissed from a prior one." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 859 (7th Cir. 2018). In this case, in order to potentially keep all the claims in the same lawsuit, the court will allow Mr. Freeman to name NP Myers as a defendant and proceed to service. *Cf. Frase v. Ashland Chem. Co. Div. of Ashland, Inc.*, No. 19-CV-273-WMC, 2022 WL 486270, at *4 (W.D. Wis. Feb. 17, 2022) (allowing plaintiff to proceed against group of defendants served "woefully late" because the case was still proceeding against a related group of defendants who had been properly served).

(4) GRANTS Vernell Freeman leave to proceed against Lt. Joshua Snow and Unit Team Manager Nathanael Angle in their individual capacities for compensatory and punitive damages for gratuitously inflicting pain by removing the towel from his head on July 18, 2018, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Linda Frye, Nathan Bates, Courtney Bridenthal, Katelyn Crull, and Lee Ann Ivers;

(7) DIRECTS the clerk to sign and seal summons for Kimberley Myers and Noe Marandet and send them to Vernell Freeman;

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Nikki Neal, Kimberly Myers, Noe Marandet, Joshua Snow and Nathanael Angle to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 19, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT