UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VERNELL FREEMAN,<br><br>          Plaintiff,<br><br>    v.<br><br>KIMBERLY MYERS and NOE MARANDET,<br><br>          Defendants. | CAUSE NO. 3:20-CV-631-JD |

## OPINION AND ORDER

Vernell Freeman, a prisoner without a lawyer, is currently proceeding in this case on two claims. All other claims raised against other defendants have been previously dismissed by the Court in a series of orders. First, he is proceeding "against NP Kimberly Myers in her individual capacity for compensatory and punitive damages for continuing Mr. Freeman on a medication containing a blood thinner after he suffered a head injury on [April] 30, 2018, and after a CT scan revealed a subdural hematoma on his brain on June 8, 2018, in violation of the Eighth Amendment[.]" ECF 242 at 10. Second, he is proceeding "against Dr. Noe Marandet in his individual capacity for compensatory and punitive damages for continuing Mr. Freeman on a medication containing a blood thinner after a CT scan revealed a subdural hematoma on his brain on June 8, 2018, in violation of the Eighth Amendment[.]" *Id.* Freeman filed a motion for summary judgment. ECF 346. The defendants filed a response and a cross motion for summary judgment. ECF 360, 361, 362, 363, 365, 366. Freeman filed a reply to

the defendants' response, along with a response to the defendants' cross motion for summary judgment. ECF 367, 371. The defendants filed a reply. ECF 372. Both summary judgment motions are now fully briefed and ripe for ruling.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard does not change when parties file cross-motions for summary judgment. *International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). "When considering the plaintiffs' motion for summary judgment, the court must consider the evidence in the light reasonably most favorable to the defendants, and vice versa." *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 818 (S. D. Ind. 2000); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) ("With crossmotions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.") (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The defendants submit affidavits and Freeman's medical records, which show the following facts: During all relevant times, Nurse Myers was an Advanced Nurse Practitioner at Miami Correctional Facility. ECF 363-8 at 1. On February 16, 2018, Nurse Myers saw Freeman for complaints of joint pain and prescribed him Excedrin Migraine tablets for his headaches. ECF 363-8 at 3; ECF 363-20 at 12-14.

4

On May 3, 2018, Freeman was seen by Nurse Courtney Bridenthal regarding injuries he sustained from falling off the top bunk in his cell. ECF 363-8 at 3-4; ECF 363-20 at 31-34. Freeman complained of injuries to the right side of his body and his head, including nausea and dizziness. *Id.* Nurse Bridenthal contacted Nurse Myers, and Nurse Myers instructed her to send Freeman for x-rays of his face. *Id.* He was sent for x-rays that same day, provided acetaminophen, and referred to a medical provider. *Id.* The x-rays did not find any abnormalities or displaced fractures. ECF 363-17 at 5; ECF 363-20 at 30.

On May 18, 2018, Freeman was seen by Nurse Myers for complaints of pain, dizziness, and headaches. ECF 363-8 at 5-6, 25-27; ECF 363-20 at 38-39. Nurse Myers performed a full examination, including a neurological examination to check for signs of concussion and intra-cranial bleeding. *Id.* Because Freeman did not complain of nausea or vomiting at that time,[1] and the examination did not show an unsteady gait, loss of balance, or increased levels of cranial pressure, Nurse Myers concluded there were no signs of cranial bleeding or neurological damage. *Id.* She diagnosed him with a contusion of the head, gave him a 180-day bottom bunk pass, and started him on verapamil. *Id.* Nurse Myers also continued Freeman's Excedrin Migraine prescription until November 13, 2018, as she believed the migraine symptoms he described were

---

[1] Freeman responds that he complained of nausea in his May 1, 2018, healthcare request form. ECF 367 at 3. But Freeman doesn't dispute that he never complained of nausea during his May 18 visit with Nurse Myers, and there's no evidence Nurse Myers ever received or reviewed Freeman's May 1 healthcare request form.

consistent with the symptoms he typically suffered when he had a migraine headache. ECF 363-8 at 26.

On June 8, 2018, Freeman received a CT scan of his head at Dukes Memorial Hospital. ECF 363-17 at 6-7; ECF 363-20 at 44-46. The CT scan showed a chronic right subdural hematoma without herniation or hemorrhage. *Id.* The report from the Dukes Memorial Hospital Radiology Department characterizes the hematoma as "relatively small" with "no acute hemorrhage seen." ECF 363-20 at 44-45. Nurse Myers discussed the CT scan findings with Dr. Marandet, and they concluded Freeman likely suffered a small subdural hematoma when he fell off his bunk and that no treatment was indicated at that time. ECF 363-17 at 7; ECF 363-20 at 50-51. No changes were made to Freeman's medication. *Id.* Nurse Myers' goals for Freeman at this point were to conservatively observe and manage his chronic subdural hematoma, reduce any symptoms that arose, and control and prevent brain damage. ECF 363-8 at 28.

On June 26, 2018, Freeman was seen by Nurse Myers to go over his CT scan results. ECF 363-17 at 7-8; ECF 363-20 at 52-53. Nurse Myers noted Freeman was in a "good mood" and did not report any pain. ECF 363-8 at 28. Nurse Myers explained to Freeman that he likely had a subdural hematoma from falling off his bunk and that no treatment was recommended at that time. *Id.*; ECF 363-17 at 7-8; ECF 363-20 at 52-53. She instructed Freeman not to participate in recreational activities, sports, or weightlifting, and renewed his bottom bunk pass. ECF 363-8 at 28-30.

On July 9, 2018, Freeman saw his physical therapist and reported "1/10 minor pain" in his shoulder, that he "felt pretty good for the past several weeks," and that he

6

now worked in commissary and was able to perform all his job duties without issue. ECF 363-20 at 60.

On July 15, 2018, Freeman submitted a "Request for Health Care" form complaining he'd had a painful headache for five days. ECF 371-1 at 15.

On July 17, 2018, Freeman was seen by Nurse Bridenthal and complained his head was hurting and his neck and shoulders were stiff. ECF 363-8 at 10-11; ECF 363-21 at 3-7. Nurse Bridenthal received orders from Nurse Myers for Freeman to receive the anti-nausea medications ondansetron and meclizine and the pain reliever tramadol. *Id.*

On July 18, 2018, Freeman was seen numerous times for complaints of headaches. ECF 363-17 at 12; ECF 363-21 at 19-24. Nurse Myers gave a verbal order for Toradol. *Id.* The next day, Freeman was taken to Eskenazi Hospital for a craniotomy and evacuation of supratentorial blood. ECF 363-17 at 13; ECF 363-21 at 25-26. He returned to the prison on July 23, 2018, and was given Norco and tramadol for pain. ECF 363-17 at 13; ECF 363-22 at 9-10, 25-29. Once he returned from Eskenazi Hospital, Freeman's only prescribed medications were Correctol (a laxative), Keppra (an anti-seizure medication), and the pain relievers Norco and tramadol. *Id.* Between July 23, 2018, and August 31, 2018, Freeman was regularly seen by Dr. Marandet and other skilled care professionals while awaiting follow-up visits with a neurologist and neurosurgeon. ECF 363-17 at 14-23. Freeman had an appointment scheduled for a follow-up CT scan on August 27, 2018, which was delayed until October 1, 2018. ECF

371 at 10; ECF 371-1 at 31-36.[2] On October 1, 2018, the follow-up CT scan was performed and found no new abnormalities compared with the prior examination. ECF 371-1 at 31. Because neither party disputes these facts, the court accepts them as undisputed.

*Nurse Myers*

Freeman is proceeding against Nurse Myers for violating his Eighth Amendment rights by continuing him on medications containing a blood thinner (1) after his April 30, 2018, head injury, and (2) after his June 8, 2018, CT scan revealed a subdural hematoma on his brain. ECF 242 at 10. The defendants concede Freeman shouldn't have been on blood thinners once he was diagnosed with a subdural hematoma. Each sub-claim will be addressed in turn.

First, Freeman argues Nurse Myers was deliberately indifferent for continuing his Excedrin Migraine prescription on May 18, 2018, because it was clear he was suffering from neurological symptoms at that time. ECF 367 at 2-5. Specifically, he argues Nurse Myers should have known he was suffering from neurological symptoms on May 18 because his Healthcare Request forms complained of nausea, dizziness, loss of balance, pressure in his head, and liquid sounds in his head. ECF 367 at 2-5. However, its undisputed Nurse Myers evaluated Freeman on May 18 by measuring his

---

[2] Freeman argues the defendants were deliberately indifferent for unnecessarily delaying his treatment by rescheduling this follow-up CT scan. ECF 371 at 10. But there's no evidence Dr. Marandet or Nurse Myers were responsible for rescheduling this CT scan, or that merely rescheduling the CT scan for a month later denied Freeman constitutionally adequate medical treatment. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"); *see also Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm").

vitals and performing a full neurological examination, which found no evidence of an unsteady gait, loss of balance, nausea, vomiting, or increased levels of cranial pressure. ECF 363-8 at 26. Nurse Myers therefore concluded Freeman showed no signs of cranial bleeding or neurological damage and that his complaints of headaches were consistent with the symptoms he typically suffered with a migraine headache. *Id.* at 25-26. Even assuming that Nurse Myers misdiagnosed Freeman at this point and her conclusion that he exhibited no symptoms of neurological damage or cranial bleeding on May 18 was incorrect, there's no evidence this was anything more than negligence or medical malpractice. *See Dunigan ex rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 592 (7th Cir. 1999) (medical malpractice, negligence, and even gross negligence do not equate to deliberate indifference); *Duckworth v. Ahmad*, 532 F.3d 675, 680-81 (7th Cir. 2008) (prison physician who was aware of cancer risk due to blood in plaintiff's urine but misdiagnosed plaintiff with another condition and pursued treatment consistent with that diagnosis was not deliberately indifferent, even though plaintiff provided expert testimony from an experienced urologist that cancer should always be ruled out when a patient has blood in his urine). Because it's undisputed Nurse Myers decided to renew Freeman's Excedrin Migraine prescription on May 18 only after she conducted a full neurological examination and concluded he showed no signs of neurological damage or cranial bleeding, there's no evidence her decision to renew his prescription at that time was a substantial departure from accepted professional judgment. *See Jackson*, 541 F.3d at 697.

Second, Freeman argues Nurse Myers was deliberately indifferent for failing to discontinue his Excedrin Migraine prescription after his June 8 CT scan showed a subdural hematoma. ECF 367 at 5-8. Nurse Myers concedes Freeman should not have continued taking Excedrin Migraine after his June 8 CT scan. ECF 363-8 at 28. But she attests that, while Freeman continued to have an active prescription for Excedrin Migraine which allowed him to request the medication from nursing staff, she didn't renew his prescription at any point after June 8 and never dispensed the medication to him. *Id.* at 28. And it's undisputed Nurse Myers exercised her professional judgment to treat Freeman's subdural hematoma following the June 8 CT scan by conservatively monitoring his condition, reducing any symptoms that arose, prescribing anti-nausea medications and pain relief, and instructing him to avoid strenuous activities. Thus, even assuming Nurse Myers made a mistake by neglecting to discontinue Freeman's Excedrin Migraine prescription after his June 8 CT scan, despite having reason to know he still was receiving the medication, there's no evidence this went beyond mere negligence or medical malpractice. *See Dunigan ex rel. Nyman*, 165 F.3d at 592 (because medical staff showed concern for an inmate by monitoring his condition and responding to his needs, their apparent misdiagnosis of his condition and failure to inform prison staff about his disease constituted mere malpractice and did not implicate constitutional concerns); *Thompson v. Stover*, No. 20-CV-252-JPG, 2020 WL 2573670, at *2 (S.D. Ill. May 21, 2020) (a nurse who treated the plaintiff's knee injury with a wrap, ice pack, and pain medication but negligently forgot to schedule his x-ray was not deliberately indifferent because "negligence is not enough to establish deliberate

indifference"); *Williams v. O'Leary*, 55 F.3d 320 (7th Cir. 1995) (even though a medical officer's failure to administer an appropriate antibiotic fell "below the standard of care for the treatment of osteomyelitis" and created a need for surgical correction, the medical officer's acts were mere negligence and did not rise to the level of deliberate indifference because the undisputed evidence showed he treated and did not ignore the condition). Accordingly, because there's no evidence that (1) the treatment Nurse Myers provided Freeman following the June 8 diagnosis of conservatively monitoring his condition, reducing any symptoms that arose, prescribing anti-nausea medications and pain relief, and instructing him to avoid strenuous activities was a substantial departure from accepted professional judgment, and (2) her oversight in failing to discontinue Freeman's Excedrin Migraine prescription was anything beyond mere negligence, no reasonable jury could conclude her conduct rose to the level of deliberate indifference. *See Jackson*, 541 F.3d at 697.

Third, Freeman argues Nurse Myers was deliberately indifferent for not providing any medical care between his June 8 CT scan and his July 19 craniotomy. ECF 371 at 4-5. However, it's undisputed the June 8 report from the Dukes Memorial Hospital Radiology Department characterized the hematoma as "relatively small" with "no acute hemorrhage seen." ECF 363-20 at 44-45. It's also undisputed Nurse Myers discussed these CT scan results with Dr. Marandet before concluding no treatment was indicated at that time, and decided to conservatively observe and manage the hematoma, reduce any symptoms that arose, and control and prevent brain damage. ECF 363-8 at 28; ECF 363-17 at 7; ECF 363-20 at 50-51. There's no evidence in the record

11

showing Nurse Myers' decision to conservatively observe and manage Freeman's hematoma at that time was "plainly inappropriate," and Freeman's belief that Nurse Myers should have pursued less conservative treatment options amounts to a mere disagreement with medical personnel. *See Ciarpaglini*, 352 F.3d at 331 (concluding an inmate's complaint that merely disagreed with his doctor's diagnoses and treatment decisions did not state a cognizable Eighth Amendment claim); *Reed v. Indiana Dept. of Corrections*, 30 F. App'x 616, 618 (7th Cir. 2002) (concluding an inmate's argument that his physician should have prescribed him a different medication, provided surgery options, and conducted a liver biopsy was a mere "disagreement with medical personnel" and could not show deliberate indifference "even if the treatment decisions demonstrate negligence or malpractice"). And while Freeman argues Nurse Myers ignored his "constant and continuous" complaints of worsening symptoms between June 8 and July 19 (ECF 371 at 4-5), the medical records belie this claim. Specifically, it's undisputed Freeman reported he was doing well without any pain on both June 26, 2018, and July 9, 2018, and first submitted a "Request for Health Care" complaining of headaches on July 15, 2018, just four days before his craniotomy. ECF 363-8 at 28; ECF 363-20 at 60; ECF 371-1 at 15. It's also undisputed that Nurse Myers responded to Freeman's July 15 complaint of headaches by prescribing him various medications including ondansetron, meclizine, tramadol, and Toradol. ECF 363-8 at 10-11; ECF 363-17 at 12; ECF 363-21 at 3-7, 19-24. Freeman argues prescribing these medications was inappropriate because they also contained or acted as blood thinners (ECF 367 at 6-8), but he provides no evidence other than his own speculation that these medications

12

acted as blood thinners, and both Nurse Myers and Dr. Marandet attest it was reasonable and appropriate to prescribe these medications. *See* ECF 363-8 at 29; ECF 363-17 at 25; *Davis v. Gee*, No. 14-CV-617-WMC, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (collecting cases rejecting pro se prisoners' efforts to self-diagnose). Accordingly, because there's no evidence in the record that it was "plainly inappropriate" for Nurse Myers to (1) conservatively manage Freeman's hematoma beginning on June 8, 2018, based on the CT scan results, and (2) prescribe ondansetron, meclizine, tramadol, and Toradol once Freeman complained of headaches on July 15, no reasonable jury could conclude these treatment decisions violated Freeman's Eighth Amendment rights. Summary judgment is therefore warranted in favor of Nurse Myers on this claim.

### *Dr. Marandet*

Freeman is proceeding against Dr. Marandet "for continuing Mr. Freeman on a medication containing a blood thinner after a CT scan revealed a subdural hematoma on his brain on June 8, 2018[.]" ECF 242 at 10. Dr. Marandet attests he never saw or treated Freeman until *after* his July 19, 2018, craniotomy, and never prescribed, dispensed, or continued him on any medication containing a blood thinner. ECF 363-17 at 24-25. In his response, Freeman argues generally that both Nurse Myers and Dr. Marandet were deliberately indifferent for prescribing and continuing him on medications containing blood thinners prior to his July 19 craniotomy. ECF 367 at 6. But Dr. Marandet attests he never prescribed or continued Freeman on any medication containing a blood thinner, and the medical records show it was Nurse Myers, not Dr.

13

Marandet, who prescribed and continued Freeman's medications prior to his July 19 craniotomy. Freeman does not dispute that he only saw Dr. Marandet after his July 19 craniotomy, and there's no evidence he ever received any medication containing a blood thinner after that date. Because there's no evidence in the record that Dr. Marandet ever prescribed or continued Freeman on any medication containing a blood thinner, no reasonable jury could conclude Dr. Marandet violated Freeman's Eighth Amendment rights. Summary judgment is therefore warranted in favor of Dr. Marandet.

For these reasons, the court:

(1) DENIES Vernell Freeman's motion for summary judgment (ECF 346);

(2) GRANTS the defendants' motion for summary judgment (ECF 360); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Vernell Freeman.

SO ORDERED on October 22, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT